IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIESHA LAWSON, | ) | CASE NO. 5:15 CV 419 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.   Nature of the case and proceedings**

This is an action by Kiesha Lynette Faye Lawson under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI") for the period prior to her eighteenth birthday, and a related claim for SSI benefits as an adult subsequent to that date.[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 13.

[3] ECF # 10.

[4] ECF # 11.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ**)

Lawson, who was 18 years old at the time of the administrative hearing,[11] completed the 10th grade and expected to be in the 11th and 12th grade during the 2013-2014 school year.[12]

The Administrative Law Judge ("ALJ") found that Lawson had the following severe impairments: attention deficit/hyperactivity disorder (ADHD); oppositional defiant disorder; borderline intellectual functioning; and obesity (20 CFR 416.92(c)).[13] The ALJ decided that

---

[5] ECF # 5.

[6] ECF # 12.

[7] ECF # 16 (Lawson's brief), ECF # 22 (Commissioner's brief).

[8] ECF # 16-2 (Lawson's charts), ECF # 22-1 (Commissioner's charts).

[9] ECF # 16-1 (Lawson's fact sheet).

[10] ECF # 23.

[11] ECF # 16-1.

[12] ECF # 11, Transcript of Proceedings ("Tr.") at 54.

[13] *Id*. at 26.

the relevant impairments did not meet or equal a listing.[14] The ALJ made the following finding regarding Lawson's residual functional capacity:

> After careful consideration of the entire record, I find that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with certain nonexertional limitations. Specifically, the claimant cannot climb ladders, ropes or scaffolds but can climb ramps and stairs. The claimant can understand, remember and carry out simple instructions and perform simple, routine tasks (DOT reasoning levels 1-2). The claimant can perform low stress work defined as work not subjecting her to strict quotas or fast-paced high production demands or work not requiring negotiation, arbitration confrontation, directing work of others or being responsible for safety of others. She can adjust to routine workplace changes provided that they are explained to her. The claimant should have minimal superficial contact with the public but can interact with coworkers.[15]

Lawson has no past relevant work history. But, based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Lawson could perform.[16] The ALJ, therefore, found Lawson not under a disability.[17]

The Appeals Council denied Lawson's request for review of the ALJ's decision.[18] With this denial, the ALJ's decision became the final decision of the Commissioner.[19]

---

[14] *Id.*

[15] *Id.* at 36.

[16] *Id.* at 37.

[17] *Id.* at 39.

[18] *Id.* at 1.

[19] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

**B.     Issues on judicial review**

Lawson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Lawson presents the following issues for judicial review:

1. Whether the ALJ's finding that plaintiff was not disabled as a child and as an adult is capable of a range of unskilled, low stress work lacked the support of substantial evidence?[20]

    a. Whether the ALJ erred in his analysis of plaintiff's cognitive impairment under the listings?[21]

    b. Whether the ALJ's findings as to childhood functional equivalence lacked the support of substantial evidence?[22]

    c. Whether the ALJ's adult residual functional capacity finding lacked the support of substantial evidence?[23]

For the reasons that follow, I conclude that the ALJ's no-disability finding has the support of substantial evidence. The denial of Lawson's application will be affirmed.

---

[20] ECF # 16 at 16.

[21] *Id*. at 17.

[22] *Id*. at 20.

[23] *Id*. at 23.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Commissioner survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.      Listing requirement*

If a claimant's impairment meets or equals one listed in Appendix 1 of the regulations, the claimant is presumed disabled without regard to age, education, or work experience.[27] The claimant bears the burden of proof that his impairment meets or equals a listed impairment.[28] In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listing.[29] A claimant may prove equivalency to a listed impairment by presenting "medical findings equal in severity to *all* criteria for the one most similar listed impairment."[30]

*a.      Listing § 112.05D - mental retardation/intellectual disability*

---

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

[28] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

[29] *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1984).

[30] *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2002), quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original).

To meet the listing under § 112.05D, the claimant's impairment must satisfy the diagnostic description in the introductory paragraph and the specific criteria set out in subpart D.[31] The diagnostic description given in the introductory paragraph is "significantly subaverage general intellectual functioning with deficits in adaptive functioning."[32] The subpart D criteria are:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function....[33]

*b. Functional equivalency*

Functional equivalency to a listing for purposes of a child's claim for supplemental security income is governed by 20 C.F.R. § 416.926a. Under the regulation, for a child between 12 and 18 years of age, the inquiry is whether the impairment imposes an extreme or marked limitation in connection with six domains - acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for one's self, and health and physical well-being.[34] If a

---

[31] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00.

[32] *Id*., § 112.05.

[33] *Id.*, § 112.05D. This relates to children under the age of 18. The listing for adults, § 12.05D, is substantially the same.

[34] 20 C.F.R. § 416.926a(b)(1).

claimant has an extreme limitation in one of these domains or a marked limitation in two domains, he or she is considered functionally equivalent to a listing and, therefore, disabled.[35]

**B.      Application of standards**

This case involves both a claim for children's supplemental security income for the period before Lawson's eighteenth birthday, and a related claim for SSI benefits as an adult after that date. Lawson asserts that the decision denying her children's SSI benefits and benefits as an adult lacks the support of substantial evidence in that the ALJ erroneously determined that she did not meet the listing at § 112.05(D) or § 12.05C. She also challenges the findings that she did not functionally equal a listing, arguing that the impairment was sufficiently severe in at least three of the six domains.

*1. Meeting a listing*

Listing § 112.05(D), which addresses intellectual disability in a child under the age of 18,[36] provides that intellectual disability is characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required severity of the disorder is met with proof that the claimant has a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or mental impairment imposing an additional and

---

[35] 20 C.F.R. § 416.926a(d).

[36] The present term "intellectual disability" replaced "mental retardation."*Barnett v. Commissioner of Social Security,* 573 Fed. App'x 461, 462 (6th Cir. 2014).

significant limitation of function.[37] A claimant must meet all of the listing's specified medical criteria in order to be considered disabled.[38]

Here, there is no dispute[39] that the lowest valid IQ scores for Lawson were scores of 70 in verbal comprehension.[40] Further, the ALJ found that Lawson's ADHD, oppositional defiant disorder, and borderline intellectual functioning were severe impairments.[41] Thus, the issue is whether Lawson has established significantly subaverage general intellectual functioning.[42]

Neither Lawson nor the Commissioner seem to question whether, by the IQ scores alone, she has established the existence of significantly subaverage general intellectual functioning.

The Sixth Circuit's decision in *Barnett v. Commissioner of Social Security* is especially instructive on this issue. First, it cautions against "collaps[ing] the Listing's first requirement (significantly subaverage general intellectual functioning) into its third (an IQ score between 60 and 70)."[43] *Barnett* stated clearly that simply "equating a low IQ score with

---

[37] *Id*. at 463(citing Listing).

[38] *Id*.

[39] Counsel for the Commissioner conceded at oral argument that there was no dispute as to the validity of the I.Q. score. The ALJ acknowledges one of these scores. Tr. at 35.

[40] Tr. at 284-85 (2008 test); 449 (2012 test).

[41] *Id*. at 26.

[42] *See*, ECF # 16 at 18-20.

[43] *Barnett*, 573 Fed. App'x at 463.

'significantly subaverage' intellectual functioning overstates the relevance of the IQ score" and would replace a nuanced evaluation of how the IQ scores relate to the child's customary behavior, replacing that evaluation merely "with a number."[44]

Moreover, *Barnett* is also clear in explaining that a finding of borderline intellectual functioning is not equivalent to a finding of "significantly subaverage intellectual functioning."[45] Where, as here, an ALJ finds the presence of borderline intellectual functioning it is proper to conclude that, of itself, "'borderline intellectual functioning' *does not* meet Listing 112.05(D)'s criteria."[46]

In this case, as noted above, the ALJ specifically found that Lawson's impairment was "borderline intellectual functioning," and not significantly subaverage intellectual functioning.[47] Moreover, the supporting medical opinion from Joshua Magleby, Ph.D., a state consultative examiner, diagnosed Lawson with borderline intellectual functioning mental retardation.[48] Finally, the medical expert testified that Lawson did not meet the

---

[44] *Id*. at 464.

[45] *Id*.

[46] *Id.* (emphasis added).

[47] Tr. at 26.

[48] *Id*. at 29 (citing record). The opinion further explicitly notes that Dr. Magleby's full mental status examination showed "a full scale IQ score of 74, placing this claimant in the borderline range." Further, the opinion also noted that this examination produced "an Axis II diagnosis of borderline intellectual functioning." *Id*. Dr. Magleby's opinion was given "some weight," particularly in that part which is "generally supported by his examination notes and [is] consistent with the overall weight of the record." *Id*. Only to the extent that Dr. Magleby then opined as to areas of function caused the ALJ to reduce the weight given from

criteria of any listing, and that her IQ scores were consistent with borderline intellectual functioning and not mild mental retardation.[49]

Therefore, because the ALJ's finding was clearly that Lawson has borderline intellectual functioning, not significantly subaverage intellectual functioning, and that finding is supported by an explicit diagnosis to that effect from the state psychological examining consultant, which, in turn, was supported by the opinion of the ME, Lawson does not meet the criteria of the listing at Section 112.05(D).[50] The failure to establish one element of the criteria means that she cannot meet the requirements of the Listing.[51]

Moreover, because the criteria for the listing at Section 12.05C, which addresses adult intellectual disability, also requires a showing of significantly subaverage general intellectual

---

"great weight" to only "some weight." *Id.*

[49] The ME testified that Lawson did not meet either of the listings, *id*. at 78, and further testified that her IQ scores were consistent with borderline intellectual functioning and not mild retardation. *Id*. at 77.

[50] To the extent that, pursuant to *Barnett*, some additional reasoning is needed to show how the IQ scores relate to Lawson's customary functioning, that reasoning is found in Dr. Magleby's opinion that assigned Lawson a GAF score of 50, "indicating moderate to severe symptoms." Tr. at 29. In that same section of the opinion, the ALJ further notes that the ME's diagnosis of borderline intellectual functioning was explicitly based on both the IQ scores and Lawson's general abilities to complete school work and everyday tasks. *Id*. Thus, neither of these opinions, which are both cited by the ALJ, provide support for concluding that the IQ scores here reflect subaverage intellectual functioning.

[51] *See*, *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)(claimant must meet "*all* of [a listing's] specified medical criteria" to be considered disabled); s*ee also*, 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets ... a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction.").

functioning that manifested itself before age 22,[52] the above analysis supports the conclusion that there was no error in finding that Lawson has not met the criteria for the listing at Section 12.05C.[53]

## 2. Functional equivalence

To determine if a claimant's impairments "functionally equal" the disabilities itemized in the listing, the ALJ examines the effects of a claimant's impairments on six behavioral domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.[54] The claimant is disabled if the impairments result in an "extreme"limitation in at least one domain or "marked" limitations in at least two.[55]

The ALJ here denied benefits for functionally equaling a listing upon finding: (1) less than marked limitations in the domain of acquiring and using information;[56] (2) no limitation in the domain of attending to and completing tasks;[57] (3) marked limitations in the domain

---

[52] 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

[53] I note further that the ALJ's opinion specifically cites to a finding by the ME that Lawson "does not meet the criteria of listing 12.05," although that finding is based on a failure to meet the criteria for adaptive functioning. Tr. At 35.

[54] 20 C.F.R. § 416.926a.

[55] *Id*.

[56] Tr. at 30.

[57] *Id*. at 31.

of interacting and relating with others;[58] (4) no limitation in the domain of moving about and manipulating objects; (5) less than marked limitations in the domain of ability to care for oneself;[59] and (6) less than marked limitations in the domain of health and well-being.[60] In making these findings, the ALJ gave great weight to the opinion of the ME that Lawson's limitations in the six specific domains were as stated above.[61]

Lawson now contends that substantial evidence does not support the findings as relates to the domains of acquiring and using information, attending and completing tasks, and caring for herself.[62]

As Magistrate Judge McHargh observed in *Chandler v. Astrue*,[63] the purpose of the medical expert under the regulations is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the claimant's testimony and the record.[64] In that

---

[58] *Id*. at 32.

[59] *Id*. at 33.

[60] *Id*. at 34.

[61] Id. at 30.

[62] ECF # 16 at 21-24.

[63] *Chandler v. Astrue*, No. 1:08CV2265, 2010 WL 148124 (N.D. Ohio Jan. 6, 2010).

[64] *Id*. at *4 (citing 20 C.F.R. § 416.927(f)(2)(iii)).

regard, "[m]edical expert testimony consistent with the evidence of record represents substantial evidence to support the Commissioner's decision."[65]

Here, both the ME and the ALJ cited to specific evidence of record to support the findings as to the severity of the limitations in each domain. Lawson, for her part, essentially argues that a different reading of the evidence, emphasizing alternative points, would yield a different result. Such re-weighing of the evidence is not properly a function of this Court.[66] Even if the evidence of record might support a different conclusion, the ALJ was entitled to rely on the ME, whose opinion is substantial evidence in support of the ultimate finding.

## Conclusion

For the reasons stated, substantial evidence supports the decision of the Commissioner that Lawson is not disabled, and therefore that decision is hereby affirmed.

IT IS SO ORDERED.

Dated: March 31, 2016            s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[65] *Id.* (citations omitted).

[66] *See, Collins v. Comm'r of Soc. Sec.,* 357 Fed. App'x 663, 668 (6th Cir. 2009).